Good morning. May it please the Court, my name is Kari Hong and I represent Petitioner Jose Guillen-Ortiz. The BIA made two errors. First, the competency hearing wasn't reliable. On April 19th, I.J. Nelson expressed doubts about Mr. Ortiz's competency and properly ordered a Franco-Gonzalez hearing. On April 26th, I.J. Parr conducted this hearing, but he did not have a competency report. Three days before, an official from ICE's Health and Service Corps sent an e-mail to the detention center asking for a psychological evaluation, and the DHS never produced it. Either the DHS had the report in its possession and never gave it to the judge, or the detention center never completed it. Either scenario is error. Under Calderon-Rodriguez, it was legal error for the DHS not provide an evaluation to the I.J. before it determined whether Mr. Ortiz was competent, and under Calderon-Rodriguez, it's an abuse of discretion for the I.J. to not discover that it did not have the most No, we don't, Your Honor. What we have at page 445 is in this e-mail, the ICE official makes it very clear that it must be provided within 7 days and says, quote, if the detainee does not have any mental health condition, you should so indicate in the attached form, unquote. So there was a duty to either produce the evaluation or state clearly that he is competent. Now, the government argues that this omission is not relevant because we don't know what's in the report, but neither did the I.J., which is why the competency finding is not reliable. Calderon-Rodriguez explained that missing medical reports that were potentially relevant, even without knowing what they contain, renders the I.J. competency finding unreliable. And then, under those circumstances, counsel, is this the equivalent of a structural error? It has to be sent back for, remanded for another hearing? Yes, Your Honor. Under Calderon-Rodriguez, the proper remedy is for remand for a full competency hearing. And the second point relates to what those directions should include and what that competency hearing should include. And that is the BIA erred here when it found that only mental illness can be the basis for the Franco-Gonzalez protections. Now, on page 31, footnote 9, the government agrees with me on the legal issue, that intellectual disabilities are cognizable grounds for incompetency under both MAM and Franco-Gonzalez. Now, the government argues there's no error here because Mr. Ortiz's claim hearing voices triggered the hearing, but the whole point of involving medical professionals is that they are the best ones to determine if someone has the capacity to function and has the ability to help themselves. If a medical report is done or when it's done on remand, it is defective unless the doctor is directed to assess whether Mr. Ortiz has an intellectual impairment, not just a mental illness. What relief are you seeking in sending it back to the IJ to look at this report and make another determination of competency? Yes, Your Honor. The requested remedy would be a remand for the IJ to conduct a full competency hearing with the benefit of a psychological evaluation and to have clear instructions that that evaluation must be made to determine whether he has an intellectual disability that interferes with his ability to represent himself. And the support for the intellectual disabilities at page 6 on Franco-Gonzalez explains that a respondent is incompetent unless they have a, quote, mental disorder. And then there's open parens including intellectual disability, open or closed parens, unquote. At page 3, when explaining what the qualified health provider must assess, number 6 on the list in the Franco-Gonzalez is, quote, intellectual developmental disorder, unquote. As this record shows, Mr. Ortiz has the indicia of an intellectual disability. He likely has a low IQ. He has either a second or third grade education. He's illiterate in Spanish. He's illiterate in English. And in the BI brief, he said that he had undiagnosed learning disability. In his initial screening, the eye psychologist called him a poor historian who repeats the same thing over and over. And the records replete where Mr. Ortiz provides nonresponsive answers to questions that are asked of him. What you're saying is that we should disregard the IJ's separate ruling that he was competent because it wasn't based on full evidence. It was an incomplete record. Nor should we look at the merits of the claim until it's determined whether he was competent or whether he needed counsel. So that would wipe out both of those decisions. Yes, Your Honor. It absolutely wipes out the asylum withholding and CAT claim because that was done without competency. And it's true to the question about whether this court has substantial or can review the factual finding. There are two routes to go. I think the easiest way is just to simply say that the legal application or the correct law was not applied on the constancy evaluation. That's Calderon-Rodriguez. That fits very nicely in that silo. The court has the authority to look at it. But again, that would be a Mejia claim. And you'd get the same result anywhere where it just was not done with a factual basis. What does the case matter of MAM, what importance should we assign to that, if any? Your Honor, the standard for mental incompetency is the same. The government's brief, I think, actually does an excellent job of explaining how those two are relevant. And MAM is a requirement for all immigration courts across the country to have this baseline of competency. But MAM itself recognizes that page 479 to 480 says that mental health or, quote, incompetency, unquote, is the basis for the inability to represent themselves. Franco-Gonzalez has that same record. The only difference is under Franco-Gonzalez he'll get additional protections if, in fact, he is found incompetent. But that is really triggers or that kicks in at the IJ finding if that competency occurs. And if there are no further questions, may I reserve my remaining time? Yes. Thank you. Thank you. May it please the Court. Rebecca Hofford Phillips on behalf of the United States Attorney General. The Court should deny this petition for review because substantial evidence supports the agency's competency finding and the government complied with all of its Franco obligations. And I can walk through all of those obligations and how they were satisfied. Is there a missing report here or we don't know? Your Honor, what we have is what Franco requires is that initial assessment and then a follow-up within 14 days. So we have exactly that here. In fact, the follow-up happened like the very next day. There was an initial intake and April, I believe it was April 6th. And then we have April 7th. We have a clinical and forensic psychologist do a full report. And that is what Franco contemplates. Now, in terms of whether the petitioner saw a doctor or had additional visits afterwards, sure. I mean, the record indicates that he could. But whether there was any change in diagnosis, that would have had to have been produced by the government if there had been any material changes in that. With respect, counsel, we don't really know what the report would have said if I understand it correctly. The I.J. apparently read that there was an assessment of mental capabilities on April 23rd, according to my notes. But the I.J. asked expressly for a Form 883, requested it within 7 days, but they went ahead with the competency hearing on April 26th when they clearly would not have had that report. Now, under Calderon-Rodriguez, isn't that unacceptable? If nobody knew about another report, if there had never been anything else done, maybe the government have a better case here. But the judge recognized that there had been a report, asked for it, but didn't wait for it, and went ahead based upon what was before him. Isn't that a problem? Your Honor, let me make a few corrections in terms of that. Okay. Please. Okay. The Form 883, I actually had a chance to look at one because what I wanted to do was compare. I understand there's not one in this record. I have it right in front of me from a different case, so I could see if the same type of information that was presented here would have been in a Form 883. Recognize that one was requested, though, right? It said, or a medical record in the email, and I want to direct the Court to page 445 of the record, and that's exactly where the government makes the request. It says, please return the attached fillable Form 883 and or send a copy of the detainee's medical records to the attention of a particular person. This is on page 445. So what the government did was the and or what came after that, which was to send the medical record, and that was in front of the IJ, and that contains exactly the same information that the Form 883 would have provided, but in a different format. How do you know that from this record? Well, Your Honor, I can, obviously, the Form 883 itself is not in. I don't know what would be in the responses to whatever that form is that we don't have in front of us. Well, Your Honor, the Franco Agreement does not specify that a Form 883 is needed. It doesn't use that word. But whatever it was, something was requested that somehow did not get back before the second hearing was held. Well, but the comparable medical report was. Well, we don't know what was comparable, as my colleague suggests. If you had a Form 883 and then you had the medical record and they said the same thing, you could compare it. That's one thing. But at least from my perspective on this, what you've got is a request for a Form 883. We don't know what that said. We have the medical record, and it may or may not have said the same thing. But under the Calderon-Rodriguez, I'm just troubled by the fact that they went ahead without it. You know, the result may ultimately be the same. I don't know. But it seems to me there's a fairly strict rule, particularly under the Franco class action, that requires that all of the medical evidence and, if you will, competency evidence be presented. But we, as an appellate court, can't tell what was in the Form 883. I'm sure you're saying it in good faith that you think it was the same thing. But we don't know what that form says. We know what the medical evidence said, at least to the degree it was presented in the hearing. We don't know what the other said. So I don't know how you can say that they were the same. Well, the medical evidence is all you need, because the Form 883 is just a particular type of form that the information could have been presented on. What you have is the diagnosis and the review from the clinical and forensic psychologists, which is exactly what the Franco agreement requires. Are you talking, referring to the GEO group report? Yes, Your Honor. Page 431. So that says initial psychological evaluation. Yes, Your Honor. Doesn't that imply something further? Let me clarify the timeline. When the petitioner was first released into, or was first put into custody, there was an initial intake screening. And that's on pages 436 to 438. Then there was a clinical and forensic psychologist. And I know that says initial, but that wasn't actually the initial screening intake. That was actually the follow-up by the clinical and forensic psychologist. Then what happens is... Your Honor, I guess I'm trying to speak in terms of both the Franco requirements and also what we have in this record here to make, to ensure the court that Franco was complied with here. What I guess I'm trying to say is that this was the initial visit with this particular psychologist. And yes, there very well could have been subsequent visits that didn't turn up anything new or additional or material. And that's where this case differs from Calderon. And I'd like to, Your Honor, mention that case before. And this is very materially distinguishable. In Calderon, the government had very stale medical records that it was trying to produce. This psychologist report was just a couple weeks prior to the competency hearing. So if something had changed between then and now, it would have been pretty unlikely. And especially because the merits hearing in this case was held a very short time after that. There wasn't that long stretch of time in this case the way that Calderon had. So we couldn't have had stale record evidence from the medical perspective. And then also, the government would have had an obligation to provide any new or materially different. Now, the fact of the matter is, Petitioner's Counsel has always had the ability to show that there was some diagnosis that was missed and could have filed a motion to reopen with the board and said, you know what, here's that developmental deficiency diagnosis that was missed here. And here's this previously unavailable material evidence warranting reopening. Never was that done here. There was no sign of anything showing that the clinical psychologist who evaluated the petitioner, who said he heard voices, and that's what prompted that. But the psychologist was looking for any and all problems here. That's what they were directed to do. And I get that. But with Calderon, I'm shorthanding it, my impression is what that tells us is that you've got to consider all the relevant medical evidence. Relevant is key. That's the key word. But as a court of appeal, we can't tell what all the relevant evidence was because I take your representation that it's exactly what was presented, but we can't tell. We don't have Form 883 here. Right. Well, what I meant is that I have a general what type of information would be included in a form. Type of information, I get that. But I mean, if we buy the government's argument on this, basically it allows an IJ to say, well, I think this is the only part of this that's relevant. I'm not going to consider the rest of the evidence. And as I understand the rule, you're supposed to consider all the evidence and determine what's relevant, but you have to consider all of the relevant evidence and then make the relevance determination. I mean, Your Honor, the government, in terms of how often or frequent must the government continue to keep putting in medical records, I mean, that's not something that the Franco agreement spells out. But what you do have in this case is a series of several hearings following this competency hearing. And I'd like to point out, Your Honor, that to the extent that there's any doubt in the court's mind regarding if something was missed, I advise the court to please take a look. Following that competency hearing, there are multiple hearings on AR 134, May 8th, AR 142, May 29th, June 8th, 151, and then the merits hearing on 158. These are all in quick succession, and so there isn't a whole lot of time lag for there to have been some major development or change. And in the course of those proceedings and in all of the testimony that was obtained from the petitioner, it is very clear from this record that there was no such mental incompetency that would have been overlooked. It sounds like what you're saying is that, yeah, maybe there might have been a little glitch. You should have had it in front of him. But in this case, certainly the petitioner's counsel would have known if something was missing. They didn't say anything. They never complained. They never asked for a reopening. And so that's the end of the story. Is that your perspective? Your Honor, what we're saying is there's nothing in this record giving some indicia of a learning disability. And the government is not disputing that a learning disability would be a mental defect that would qualify. That's not where the dispute is. The dispute is whether this particular petitioner indicated anything, even remotely, showing that a learning disability, rather than a lack of education, was the problem. And a lack of education, poor education, is simply not the same as a learning disability. And that's what he asked this Court to find. And that would open the door wide open to so many petitioners making the same claim. And, Your Honor, I see that my time is running out. I'm happy to answer any further questions. If not, the government will rest on its brief. All right. Thank you, counsel. I have four quick points. First, on the dates and the order of what happened, this is all on the screening dates, which is on page 431 and 432, which Judge Wardlaw correctly identified as the initial screening report. Mr. Ortiz was taken into custody April 5th. April 6th, he was then given this initial screening, which is given to all individuals in custody. On April 19th, nearly two weeks later, he first appeared before Judge Nelson, and that's when she expressed doubts. After that point, he had the competency. So this report on April 6th wasn't related to that matter. Second, on the substance of the report, even if the government says that this report would have been enough, I'd like to bring the Court's attention to page 432. There is one thing in bold that says, Objective Findings Mental Status Exam, which is filled in. And then there's a second section in bold that says, Assessment MSM-5 Diagnosis. That, and then there are four issues, deferred, planned, deferred orders. Everything is blank. So even if the Court says that this report would have been enough, this report is absolutely complete. And so the third, just what we'd like to reiterate, the Court to have the remedy to actually direct to intellectual disabilities. The government counsel says that low education is different than no education, but MAM itself recognizes that special education and IEPs is absolutely relevant to whether someone can competently represent themselves. My final point, and I think this is where MAM and Franco have really contributed to the importance of providing defense to pro se litigants. As it is for any pro se litigant appearing in immigration court, it is David versus Goliath. There's no question about that. But when someone doesn't have the capacity to even represent themselves, when they can't even read, which makes it impossible to even look at the law library, you're asking a David to go against a Goliath without even a slingshot. Even if you're right, the government kind of has a point on that in terms of how many people would be affected by that one. But let me ask you this. She makes the point that there was no motion to reopen, even though you would have certainly known on your own, maybe not you personally, but whoever was representing you at that point, would have known if there was a deficiency in the report that the IJ considered that was basically you could have said to the BIA, look, they missed this. This is important. They didn't have a complete report. We need to open this. Why wasn't that done? Well, Your Honor, there was no attorney involved below. At any point? The one in his initial master calendar hearing, there was a pro bono attorney before the day. Right. She was the one that indicated to Judge Nelson that he appears to be unable to be facile and communicative. That is when she expressed her doubts. There was no other attorney involved in this matter. I became involved as a pro bono attorney on appeal. I'm in Boston, and the point is that this is supposed to be done properly. This is why Franco Gonzalez, and to your point, this is not an overload on the system because what it provides is an accuracy and a reliance at the get-go. If this had been properly applied, we would not have had the wasted resources of an appeal because a lawyer would have been properly appointed below, and the claim would have been presented, and maybe he would have granted or maybe he would have denied, but at least the trouble goes from having to go up and down rather than doing the remedy, which Franco Gonzalez said, which is not only to the benefit to Mr. Ortiz, but it's to the benefit to the court that they're reliable results. All right. Thank you, counsel. Yulian Ortiz vs. Barr is submitted.
judges: Siler, Wardlaw, M. Smith